Michael St. James, CSB No. 95653
ST. JAMES LAW, P.C.
155 Montgomery Street, Suite 1004
San Francisco, California 94104
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

Counsel for Theta Microelectronics, Inc.

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

San Jose Division

In re

THETA MICROELECTRONICS, INC.

Debtors

Case No.

Chapter 11

**PLAN OF REORGANIZATION**

*Dated May 22, 2015*

This Plan of Reorganization (the "Plan") is proposed by Theta Microelectronics, Inc. (the "Debtor") for the resolution of all claims against and interests in it. The Disclosure Statement accompanying this Plan contains a description of how this Plan treats creditors and stockholders and how it provides for the payment of their claims, as well as a discussion of the Debtor's financial condition and an analysis of the alternatives to this Plan.

## ARTICLE I

## DEFINITIONS

A. The following definitions apply in this Plan:

1.1. "Allowed Claim" means a Claim against the Debtor (a) in the amounts set forth in Schedule 3 hereto; or (b) proof of which was timely filed with the Bankruptcy Court and as to which no objection has been filed; or (c) which was listed in Debtor's Schedules of Assets and Liabilities filed herein and (i) not shown as disputed, contingent or unliquidated and (ii) as to which no objection has been filed; or (d) which has been Allowed by a Final Order of the Bankruptcy Court.

1.2. "Allowed Interest" means an Interest in the Debtor (a) as set forth in Schedule 4 hereto; or (b) proof of which was timely filed with the Bankruptcy Court and as to which no objection has been filed; or (c) which was listed in Debtor's Schedules of Assets and Liabilities filed herein and (i) not shown as disputed, contingent or unliquidated and (ii) as to which no objection has been filed; or (d) which has been Allowed by a Final Order of the Bankruptcy Court.

1.3. "Allowed Secured Claims" means the Claims of the Secured Noteholders and such other secured claims as are Allowed by a Final Order of the Bankruptcy Court.

1.4. "Bankruptcy Court" means the Judges of the United States Bankruptcy Court for the Northern District of California, or of the United States District Court for the Northern District of California, as the context requires.

1.5. "Certificate" means the Certificate of Incorporation, in substantially the form attached as part of Exhibit B hereto.

1.6. "Causes of Action" means any and all claims and causes of action which might be asserted by the Debtor or the Debtor in Possession.

1.7. "Claim" means any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or any rights or equitable remedies for breach of performance, if such breach gives rise to a right to payment, whether or not reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

1.8. "Claims Bar Date" means the later of (a) the first business day which is at least 120 days after the Petition Date, or (b) the Claims Bar Date established in a Notice issued by the Bankruptcy Court, if any.

1.9. "Class 3 Interest Rate" shall mean 0.5%.

1.10. "Code" means the Bankruptcy Code, codified in Title 11 of the United States Code, 11 U.S.C. §101, et seq., including all amendments thereto.

1.11. "Confirmation" means the entry of an Order of Confirmation by the Bankruptcy Court.

1.12. "Confirmation Date" means the date on which the Order of Confirmation is entered.

1.13. "Creditor" means any person or entity that has a Claim against the Debtor.

1.14. "Debtor" means Theta Microelectronics, Inc.

1.15. "Disallowed Claim" means a Claim that has been (i) deemed not allowable against the assets of the Bankruptcy Estate by an order of a Court of competent jurisdiction or by stipulation of the Claim holder and any party objecting to the Claim, (ii) a Claim that has been voluntarily withdrawn by the Claim holder, or (iii) a Claim which the Debtor listed on its Schedule of Liabilities as a disputed, contingent, or unliquidated claim and for which the claim holder did not file a proof of claim prior to the Claims Bar Date.

1.16. "Disputed Claim" means a claim which falls into one of the following categories: (i) a Claim listed by the Debtor in its schedule of liabilities or for which a Proof of Claim has been filed as to which an objection has been filed and which objection (a) has not been withdrawn, or (b) has not been determined by a Final Order, or (ii) a Claim listed by the Debtor in its schedule of liabilities as being disputed, contingent, or unliquidated, a Claim for which no Proof of Claim has been filed.

1.17. "Effective Date" means a date selected by the Debtor which is not later than 30 days after the Confirmation Date.

1.18. "Exit Financing" shall mean the raising of funds substantially as set forth in Article VIII herein.

1.19. "Estate" means the Debtor or the Reorganized Debtor, as the case may be, in its capacity as the holder of property.

1.20. "Final Decree" means an Order so entitled, which shall be entered as promptly as possible after the Closing.

1.21. "Income Stream" means the distributions of a portion of the proceeds of monetizing the Patents received by the Debtor from Theta IP, LLC pursuant to the IP Contract.

1.22. "IP Contract" means that certain Agreement between the Debtor and Theta IP LLC, in substantially the form of Exhibit A hereto.

1.23. "Liquidation Preference" means the right of the holders of a series of Preferred Stock to receive distributions aggregating a specified dollar amount before any distribution is made to other classes or series of stockholders.

1.24. "Order of Confirmation" means the order confirming the Plan pursuant to Section 1129 of the Code, which Order shall also ratify the Certificate.

1.25. "Patents" mean the Debtor's patents, identified in an attachment to Exhibit A hereto and in Schedule B-22.

1.26. "Person" shall mean an individual, partnership, corporation, trust, unincorporated association, limited liability company, or other entity or association.

1.27. "Plan" means this Plan of Reorganization, including any modification or amendment hereof.

1.28. "Reorganized Debtor" means the Debtor, on and after the Confirmation Date.

1.29. "Rules" mean the Federal Rules of Bankruptcy Procedure.

1.30. "Secured Claim" means a Claim secured by a lien on any property of the Estate, to the extent of the value of the interest of the holder of such Claim in the Estate's interest in such property.

PLAN OF REORGANIZATION 3

Case: 15-51770   Doc# 7   Filed: 05/25/15   Entered: 05/25/15 07:39:52   Page 4 of 19

1.31. "Secured Noteholders" mean the following persons and entities, owed the following principal amounts as of April 15, 2015:

   1.31.1. Alpha Ventures     $20,000

   1.31.2. Nexit Ventures     $12,000

   1.31.3. Nif/T, LLC       $14,000

   1.31.4. Bruce Bourbon     $12,000

   1.31.5. Demetris Paraskevopoulos   $12,000

   1.31.6. Yannis Tsividis      $ 2,000

   1.31.7. Yannis Papananos     $ 1,000

1.32. "Stock Conversion" has the meaning supplied by Paragraph 2.4.2.

B. The singular of any of the foregoing definitions includes the plural and vice versa where the context so requires.

C. A term used in the Plan, whether or not capitalized, that is not defined in the Plan but that is used in the Code has the meaning assigned to the term in the Code.

## ARTICLE II

## MEANS OF EXECUTION

2.1. On or promptly after the Confirmation Date, the Debtor shall consummate the Exit Financing.

2.2. On or promptly after the Confirmation Date, the Debtor shall implement the IP Contract by:

  2.2.1. Delivering to Theta IP, LLC the fully executed IP Contract;

  2.2.2. Transferring all of its right, title and interest in the Patents to Theta IP, LLC;

  2.2.3. Paying to Theta IP, LLC such amounts as shall have come due under the IP Contract, and

  2.2.4. Thereafter performing the IP Contract according to its terms.

2.3. On the Confirmation Date, the Debtor shall issue 100,000,000 shares of Class 1 Preferred Stock, for distribution in connection with the Exit Financing, at a price of $0.001 per share.

2.4. The Debtor shall (a) give effect to the anti-dilution provisions associated with the issuance of the Class A and Class B Preferred Stock, and (b) effect a conversion of all Class A and Class B Preferred Stock to Common Stock, consistent with the conversion provisions associated with the issuance of the Class A and Class B Preferred Stock. This will result in the following:

    2.4.1. This will result in the following:

| | Initial Shares | Liquidation Preference | Current "As Converted" Shares | Current "As Converted" Percent | Current Effective Price | Adjusted Common Shares | Percent |
|---|---|---|---|---|---|---|---|
| Common | 3,769,713 | | 3,769,713 | 19.4% | | 3,769,713 | 1.9% |
| Series A | 6,260,331 | $ 0.8466 | 7,066,662 | 36.4% | $0.7500 | 43,138,959 | 21.6% |
| Series B | 6,412,855 | $ 0.8600 | 8,594,445 | 44.2% | $0.6417 | 52,405,149 | 26.3% |
| TOTAL | 16,442,899 | | 19,430,820 | 100% | | | |
| | | | | | | | |
| New Preferred (Series 1) | | | | | | 100,000,000 | 50.2% |
| TOTAL | | | | | | 199,313,821 | 100.0% |

    2.4.2. The foregoing transactions shall be collectively referred to herein as the "Stock Conversion."

    2.4.3. The Stock Conversion and the issuance of new Series 1 Preferred Stock shall enjoy an exemption from the Securities Laws to the fullest extent contemplated by Section 1145 of the Bankruptcy Code.

2.5. On the Effective Date, the Debtor shall fund the treatment of all unclassified claims, payment of Class 1 and Class 2 claims and make every other payment required to be made under this Plan on the Effective Date.

2.6. From and after the Effective Date, the Reorganized Debtor shall apply all cash on hand and the Income Stream as follows:

    2.6.1. First, to the payment of any unpaid obligations which are to be paid on the Effective Date pursuant to Paragraph 2.2 herein.

2.6.2. Second, to the payment (or provision for the payment) of the expenses of the administration of the Reorganized Debtor, which expenses may include fees charged by a disbursing agent acting on behalf of the Reorganized Debtor;

2.6.3. Third, to the repayment of Exit Notes with interest, *pari passu*, until paid in full;

2.6.4. Fourth, to payment of Allowed Class 3 general unsecured claims, together with post-petition interest thereon at the Class 3 Interest Rate, *pari passu,* until paid in full;

2.6.5. Fifth, to holders of Class 1 Preferred Stock, until they have received their Liquidation Preference in full, and

2.6.6. Thereafter to common stockholders sharing with the holders of Class 1 Preferred Stock on an as-converted basis.

2.7. From and after the Confirmation Date:

2.7.1. Any amounts to be paid under this Plan shall be paid by the Debtor.

2.7.2. All funds which are undisbursed or are returned, e.g., because the recipient of the funds could not be located or because the recipient refused to accept the funds, and are not claimed within 90 days following initial disbursement, and any other excess and undistributable cash, including *de minimis* distributions, shall be retained by the Debtor and used in subsequent distributions to other persons.

2.8. From and after the Effective Date, the Reorganized Debtor may move the Court for such Orders as it deems advisable or beneficial to creditors or for the implementation of this Plan.

2.8.1. From and after the Effective Date, the Reorganized Debtor may prosecute objections to claims.

2.8.2. Professionals employed by the Reorganized Debtor may be paid in the ordinary course and need not submit fee applications with respect to services performed after the Confirmation Date.

2.9.  Except as provided in the following sentence, on and after the Effective Date, all of the property of the Estate, including without limitation the Causes of Action, shall revest in the Reorganized Debtor, free and clear of all claims, liens and interests except as specifically provided herein. On the Confirmation Date, the Patents and the Causes of Action for infringement or violations of the Patents shall vest in Theta IP, LLC pursuant to the IP Contract.  Confirmation of this Plan shall result in a release of any Causes of Action that arise exclusively under Title 11.

2.10.  The Board of Directors which was elected pre-petition shall serve out the balance of their terms, and the voting on Board members shall thereafter proceed without regard to the bankruptcy case.

2.11.  Notwithstanding anything to the contrary, on the Effective Date the Debtor's By-Laws shall be deemed amended so as to prohibit the issuance of non-voting stock.

2.12.  Upon certification by Theta IP, LLC that further efforts to monetize the Patents would be impracticable and that the monetization of the Patents to the extent practicable has been completed and the proceeds thereof distributed (the "Termination of the Income Stream"), distributions by the Reorganized Debtor to creditors and stockholders pursuant to this Plan shall cease and the Reorganized Debtor shall wind up its affairs and dissolve.

2.13.  Notice of matters that arise following the Confirmation, including without limitation fee applications, shall be given only to (a) the Reorganized Debtor and its counsel; (b) the Office of the United States Trustee, and (c) persons who request notice of such matters through a writing served on the Debtor not earlier than the Confirmation Date.

2.14.  As soon as practicable after the Confirmation, the Debtor shall seek entry of a Final Decree in the case.

## ARTICLE III

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

3.1.  *Claims Provided For Herein*. Various types of Claims and Interests are defined in this Plan. This Plan is intended to deal with all Claims and Interests against or in the Debtor or property of the Debtor or the Estate of whatever character, whether or not with recourse, whether or not contingent or unliquidated, and whether or not previously Allowed by the Bankruptcy Court pursuant to Section

502 of the Code, which arise in any manner on or before the Effective Date. However, only those Claims Allowed pursuant to Section 502 of the Code will receive any distribution under this Plan.

3.2. *Limitation on Inclusion in a Class*. A Claim shall be deemed classified in a particular class only to the extent that the Claim qualifies within the description of that class, and shall be deemed classified in a different class to the extent that any remainder of the Claim qualifies within the description of such different class. A Claim is in a particular class only to the extent that the Claim is an Allowed Claim in that class.

3.3. *Non-Classified Claims*. The following Claims shall not be classified hereunder:

    3.3.1. All administrative expenses and other Claims, if any, Allowed pursuant to Section 503(b) of the Code and entitled to priority pursuant to Section 507(a)(1) of the Code, save and except such Claims as are subject to treatment under Paragraph 3.3.2 herein; and

    3.3.2. The Allowed Claim of the Office of the United States Trustee in respect of any demand for fees entitled to treatment pursuant to Section 1129(a)(12) of the Code.

3.4. *Classification of Claims and Interests*. Allowed Claims not described in Section 3.3 hereof are divided into the following classes:

    3.4.1. *Class 1:* The Claims of the Secured Noteholders, which shall be Allowed in the principal amounts specified in Paragraph 1.31 together with contractual interest until paid, and any other claim which is determined to be an Allowed Secured Claim by the Bankruptcy Court.

    3.4.2. *Class 2*: The Claims of general unsecured creditors of the Debtor, to the extent they may be Allowed and entitled to priority under Section 507 of the Bankruptcy Code.

    3.4.3. *Class 3*: The Claims of general unsecured creditors of the Debtor, to the extent they may be Allowed, which are not otherwise classified herein.

    3.4.4. *Class 4A*: The Interests of the holders of Series A Preferred Stock.

    3.4.5. *Class 4B*. The Interests of the holders of Series B Preferred Stock.

    3.4.6. *Class 4C*: The Interests of the holders of Common Stock

# ARTICLE IV

## PROVISIONS FOR TREATMENT OF NON-CLASSIFIED CLAIMS
## IMPAIRED CLAIMS AND UNIMPAIRED CLAIMS

4.1. *Non-Classified Claims*. The non-classified Claims described in Section 3.3 hereof shall be treated as follows:

    4.1.1. With respect to those Claims described in Sections 3.3.1, to the extent, if any, that the holder of such a Claim has not heretofore been paid, then, on the Effective Date or as promptly thereafter as the Claim shall become an Allowed Claim, each holder of such a Claim shall receive from the Reorganized Debtor cash equal to the Allowed amount of such Claim.

    4.1.2. With respect to those Claims described in Section 3.3.2, to the extent, if any, that such a Claim has become due prior to the Confirmation Date and has not heretofore been paid, then, on the Effective Date, the holder of such a Claim shall receive from the Reorganized Debtor cash equal to the Allowed amount of such Claim. Any such claim relating to the period from the Confirmation Date until entry of the Final Decree shall be paid by the Estate promptly after it has been liquidated.

4.2. *Classified Claims and Interests*

    4.2.1. <u>Class 1</u>: The Class 1 Claims are unimpaired. In full and complete satisfaction, the holders of Allowed Class 1 Claims shall receive payment in full, with contractual interest, on the Effective Date, or as promptly thereafter as the Class 1 Claim shall be Allowed.

    4.2.2. <u>Class 2</u>: The Class 2 Claims are unimpaired. In full and complete satisfaction, the holders of Allowed Class 2 Claims shall receive payment in full, with interest at the Class 3 Interest Rate, on the Effective Date, or as promptly thereafter as the Class 2 Claim shall be Allowed.

    4.2.3. <u>Class 3</u>: The Class 3 Claims are Impaired.

        4.2.3.1. In full and complete satisfaction, the holders of Class 3 Claims shall receive payments over time from the Income Stream, together with interest at the

Class 3 Interest Rate, such interest accruing from the filing of the Petition until the Class 3 Claims have been paid in full.

4.2.3.2. Payments to the holders of the Class 3 Claims shall continue until the Claims have been paid in full with interest or the Termination of the Income Stream, whichever first occurs.

4.2.3.3. No payment shall be made on account of the Class 3 Claims unless and until all holders of Exit Notes have been paid in full.

4.2.4. Class 4: With respect to all classes of equity:

4.2.4.1. Notwithstanding anything in the Debtor's By-Laws or Articles of Incorporation to the contrary, nothing shall be distributed to or for the benefit of the holders of any Class 4 Interests unless and until all Class 3 Claims have been paid in full, with post-petition interest at the Class 3 Interest Rate.

4.2.4.2. Thereafter, the Income Stream shall be distributed among the holders of the Class 4 Interests in accordance with their rights and priorities; e.g., first on account of Series 1 Preferred Stock until the holders thereof shall have received their Liquidation Preference, and thereafter as equal dividends on account of Series 1 Preferred Stock and Common Stock, after giving effect to the Stock Conversion.

4.2.5. Class 4A: The holders of Class 4A Interests in the Debtor shall retain such Interests, subject to the Stock Conversion, but the rights and powers of the holders, and the funds that may be distributed to the holders, shall be governed by this Plan and the Certificate.

4.2.6. Class 4B: The holders of Class 4B Interests in the Debtor shall retain such Interests, subject to the Stock Conversion, but the rights and powers of the holders, and the funds that may be distributed to the holders, shall be governed by this Plan and the Certificate.

4.2.7. Class 4C: The holders of Class 4C Interests in the Debtor shall retain such Interests, subject to dilution as a result of the Stock Conversion, but the rights and powers of the holders, and the funds that may be distributed to the holders, shall be governed by this Plan and the Certificate.

Case: 15-51770    Doc# 7    Filed: 05/25/15    Entered: 05/25/15 07:39:52    Page 11 of 19

# ARTICLE V

# EXECUTORY CONTRACTS

*Assumption and Rejection of Unexpired Leases and Executory Contracts.*

5.1. The IP Contract and the Exit Financing shall be deemed assumed on the Confirmation Date.

5.2. All executory contracts and leases not assumed during the course of the Chapter 11 case or assumed pursuant to the preceding paragraph shall be rejected by confirmation of this Plan.

5.3. Notwithstanding anything to the contrary, the contracts with Bruce R. Bourbon and with Nif/T, LLC identified in Schedule G of the Debtors Schedules of Assets and Liabilities shall be deemed rejected.

# ARTICLE VI

# MISCELLANEOUS PROVISIONS

6.1. *Proofs of Claim and of Interest:*

6.1.1. The Claims of Convertible Noteholders shall be Allowed as a Class 3 Claim in the amounts reflected in Schedule 3. In the event a Convertible Noteholder asserts a Claim in a different amount or a different Class, it must do so by filing a Proof of Claim on or before the Claims Bar Date.

6.1.2. Except as set forth in the preceding paragraph or the definition of an Allowed Claim, the holder of each and every general unsecured of any type whatsoever must assert such claim by filing a Proof of Claim on or before the Claims Bar Date. For the purposes of this Plan provision, no "informal claim" shall be permitted, and in the absence of a timely filed formal Proof of Claim, each such general unsecured claim shall be deemed discharged by the confirmation of this Plan.

6.1.3. The Interests of Shareholders shall be Allowed as Class 4 Interests as reflected in Schedule 4, but subject to the effect of the Stock Conversion. In the event a holder asserts a pre-bankruptcy Interest in a different amount or a different priority, it must do so by filing a Proof of Interest on or before the Claims Bar Date. For the purposes of this Plan provision, no "informal

claim" shall be permitted, and in the absence of a timely filed formal Proof of Interest, each such Interest shall be deemed cancelled and discharged by the confirmation of this Plan, except to the extent acknowledged in Schedule 4.

6.2. *Comparable Treatment:*

    6.2.1. In the event that one of the Debtor's pre-petition consultants shall prevail, whether through litigation or settlement, on the contention that such consultant was entitled to pre-petition interest on his claim, all comparably situated consultants shall thereupon become entitled to comparable pre-petition interest on their claims, without any need for the assertion of such a contention in a Proof of Claim or otherwise.

6.3. *Payments on Claims*:

    6.3.1. *Disputed Claims.* No distribution shall be made on account of any Disputed Claim, unless and until it becomes an Allowed Claim. Promptly upon a Disputed Claim becoming an Allowed Claim, it shall receive the treatment contemplated herein for such a Claim.

    6.3.2. *No Distribution to Disallowed Claims:* Notwithstanding any provision of the foregoing, no distribution shall be made on account of any Claim determined to be a Disallowed Claim.

6.4. *Objections to Claims:* Any party in interest may Object to any claim or interest treated herein by filing such Objection with the Court and serving it upon the respondent not later than the 7th day before the first day set for the Confirmation Hearing. The Debtor and Reorganized Debtor may Object to any Claim or Interest at any time. Upon the filing of an Objection, the respondent Claim or Interest shall be Disputed.

6.5. *Reserve for Disputed Claims:*

    6.5.1. Whenever a distribution shall be made to the holders of Allowed Claims in a Class, the Debtor shall establish a reserve for the funding of a comparable distribution to holders of Disputed Claims in that Class, pending Allowance or Disallowance of such Disputed Claims.

    6.5.2. In general, the reserve shall be calculated from time to time as the amount necessary to fund an equivalent ratable distribution on the aggregate amount of pending Disputed Claims. Notwithstanding the foregoing, the Court for good cause shown can establish a

Case: 15-51770    Doc# 7    Filed: 05/25/15    Entered: 05/25/15 07:39:52    Page 13 of 19

different or lesser amount for the reserve.

6.5.3. As and to the extent that a Disputed Claim becomes Allowed, the Debtor shall fund a ratable distribution on that Allowed Claim from the reserve. As and to the extent that a Disputed Claim becomes a Disallowed Claim, a ratable portion of the reserve shall be released to the Debtor.

6.6. *Survival of Legal Claims*. The Reorganized Debtor or Theta IP, LLC, as the case may be, shall have the right, post-confirmation, to pursue any and all Causes of Action that survive the re-vesting of assets contemplated by Article II of this Plan.

6.7. *Discharge of Claims and Termination of Interests*. Except as otherwise provided in the Plan or the Order of Confirmation and to the maximum extent permitted by the Bankruptcy Code and any other applicable law: (i) on the Effective Date, the Reorganized Debtor shall be deemed discharged and released from all Claims and Interests, including without limitation demands, liabilities, Claims and Interests that arose before the Effective Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (A) a Proof of Claim or Proof of Interest based on such debt or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (B) a Claim or Interest based on such debt or Interest is Allowed pursuant to section 502 of the Bankruptcy Code, (C) the holder of a Claim or Interest based on such debt or Interest has accepted the Plan, or (D) such Claim is listed in the Debtor's schedules of assets and liabilities; and all Persons (including without limitation governmental entities) shall be precluded from asserting against the Reorganized Debtor, its successors, or its assets any other or further Claims or Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date. Except as otherwise provided in the Plan or the Order of Confirmation, upon the occurrence of the Effective Date, the Order of Confirmation shall act as a discharge of any and all Claims against and all debts and liabilities of the Reorganized Debtor, as provided in sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment against the Reorganized Debtor at any time obtained to the extent that it relates to a Discharged Claim.

6.8. *Injunction*. Entry of the Order of Confirmation will permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims

discharged or modified pursuant to the Plan.

6.9. *Effect of Confirmation*. On the Confirmation Date, the provisions of this Plan shall be binding on the Debtor, the Estate, all holders of Claims against or Interests in the Debtors and all other Persons whether or not such Persons have accepted this Plan. Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay of section 362(a) of the Bankruptcy Code shall terminate.

6.10. *Integration*. The provisions of this Plan and the Order of Confirmation supersede any and all prior agreements, documents, understandings, written or otherwise, in respect of any Claim against the Debtors, and the treatment or satisfaction thereof. All such prior agreements, documents or understandings are merged herein, and no person may thereafter pursue or prosecute any Claim or demand arising out of or pertaining to such superseded agreements, documents or understandings as against the Committee or the Estate.

6.11. *Conclusive Presumption of Propriety*: Confirmation of this Plan shall constitute its judicial approval, and shall bar any claim against the Debtor's officers, directors, professionals or agents respecting the proposal, prosecution, approval or implementation of the Plan.

6.12. *Section Headings*. The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

6.13. *Post-Confirmation United States Trustee Quarterly Fees*. A quarterly fee shall be paid by the Reorganized Debtor to the United States Trustee, for deposit into the Treasury, for each quarter (including any fraction thereof) until this case is converted, dismissed, or closed pursuant to a final decree, as required by 28 U.S.C. § 1930(a)(6).

6.14. *Chapter 11 Post-confirmation Reports and Final Decree.*

6.14.1. Post-confirmation Reports. Not later than 90 days after entry of the Confirmation Order and quarterly thereafter, the Debtor shall file a quarterly post-confirmation status report, the purpose of which is to explain the progress made toward substantial consummation of the confirmed plan of reorganization. The quarterly reports shall be filed no later than 30 days following the end of the applicable calendar quarter. The report shall include a statement of receipts and disbursements, with the ending cash balance, ending on the last day of a quarter.

The report shall also include information sufficiently comprehensive to enable the court to determine: (1) whether the order confirming the plan has become final; (2) whether deposits, if any, required by the plan have been distributed; (3) whether any property proposed by the plan to be transferred has been transferred; (4) whether the Debtor under the plan has assumed the business or the management of the property dealt with by the plan; (5) whether payments under the plan have commenced; (6) whether accrued fees due to the United States Trustee under 28 U.S.C. § 1930(a)(6) have been paid; and (7) whether all motions, contested matters and adversary proceedings have been finally resolved. Further quarterly reports must be filed every 90 days thereafter until entry of a final decree, unless otherwise ordered by the court.

6.14.2. Service of Reports. A copy of each report shall be served, no later than the day upon which it is filed with the court, upon the United States Trustee and such other persons or entities as may request such reports in writing by special notice filed with the court.

6.15. *Final Decree.* After the Plan is substantially consummated as contemplated by Paragraph 2.14 hereof, the Debtor shall file an application for a Final Decree, and shall serve the application on the United States Trustee, together with a proposed final decree.

## ARTICLE VII

### RETENTION OF JURISDICTION

The Bankruptcy Court shall retain and have jurisdiction over the Reorganization Case for all purposes provided by the Code, including, without limitation, for the following purposes:

7.1. To determine any and all objections to the allowance of Claims and to allow, disallow, estimate, liquidate or determine any Claim;

7.2. To grant full and complete relief upon the request of the Reorganized Debtor;

7.3. To determine any and all motions for compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Code or the Plan which accrued on or prior to the Confirmation Date;

7.4. To determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on the Effective Date, except as provided in the Confirmation Order, or which shall be commenced on or after the Effective Date and be properly before the Bankruptcy Court;

7.5. To consider any modifications of the Plan, any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Order of Confirmation, to the extent authorized by the Code; and

7.6. To implement the provisions of the Plan, including the provisions of Paragraph 6.11 and to issue orders in aid of execution of the Plan to the extent authorized by Section 1142 of the Code.

## ARTICLE VIII

## EXIT FINANCING

8.1. The Debtor shall raise the Exit Financing from participating stockholders ("Participants") ratably with reference to their existing stockholder investments.

8.2. The aggregate amount of the Exit Financing shall be $400,000. The Exit Financing consists of the purchase for cash of $100,000 in shares of Series 1 Preferred Stock and commitments to advance funds totaling $300,000 pursuant to notes (the "Exit Notes") to be issued by the Debtor Forms of the Exit Notes are attached as part of Exhibit B.

8.3. Each Participant in the Exit Financing shall fund its ratable portion of the Exit Financing (the "Participant's Financing") determined as a fraction the numerator of which is the Participant's aggregate pre-bankruptcy investment in Theta and the denominator of which is the aggregate pre-bankruptcy investment held by all Participants (hereinafter the "Participant's Percentage.")

8.4. Each Participant shall (a) commit to purchase the Debtor's Exit Notes aggregating 75% of the Participant's Financing and (b) to purchase Series 1 Preferred Stock equivalent to the Participant's Percentage of all Series 1 Preferred Stock at a cost of 25% of the Participant's Financing.

8.5.    The Series 1 Preferred Stock shall have an aggregate Liquidation Preference equal to the aggregate pre-petition Liquidation Preference of the Series A and Series B Preferred Stock, that is, $10,815,052.

## ARTICLE IX
## MODIFICATION

Pursuant to the provisions of Section 1127 of the Code, the Debtor reserves the right to modify or alter the provisions of the Plan at any time prior or subsequent to Confirmation.

## ARTICLE X
## CONFIRMATION REQUEST

If necessary, the Debtor requests Confirmation of the Plan pursuant to Section 1129(b) of the Code.

DATED:    May 22, 2015                              THETA MICROELECTRONICS, INC.


                                                    By:  /s/  *Bruce R. Bourbon*  .
                                                         Bruce R. Bourbon
                                                         Chairman and CEO


Presented by:

ST. JAMES LAW, P.C.


By:   /s/  *Michael St. James*  .
      Michael St. James
Counsel for the Debtor

**Exhibits**

    A.        IP Contract
    B.        Exit Financing Documents

    Schedule 3:    Amounts Owed to Convertible Noteholders
    Schedule 4:    Shareholder Interests